## Case No. 14,997.

### UNITED STATES v. DUANE.

[Wall., Sr., 102.] [1]

Circuit Court, D. Pennsylvania. May 22, 1801.

CONTEMPT — PUBLICATION REFLECTING ON COURT AND PARTIES—JUDGMENT.

[Cited in U. S. v. Jacobi, Case No. 15,460, to the point that contempts are crimes and may be prosecuted as such.]

[This was an action on the case for a libel on the plaintiff in the case of Hollingsworth v. Duane, in the Aurora, a newspaper published by William Duane, the defendant. A motion to postpone the trial was denied. Case No. 6,614. The trial then proceeded, the main question being as to whether the defendant was a citizen of the United States or an alien. The verdict of the jury was to

[1] [Reported by John B. Wallace, Esq.]

the effect that the defendant was not a citizen of the United States, but an alien, and subject of the king of Great Britain. Id. 6,615. Subsequently the counsel for the defendant moved to set aside the verdict because the foreman of the jury was an alien. The motion was overruled. Case No. 6,618. See Cases Nos. 6,616, 6,617, 14,996, and 16,654, all on questions as to contempt of court during the proceedings in this case.]

The attachment ordered in the preceding case [Case No. 6,616] being immediately served, and the defendant taken into custody, he was admitted to bail on his own recognizance in 500 dollars, to appear tomorrow morning to answer to the contempt.

He appeared accordingly, and was asked whether he desired interrogatories; his counsel said he did not. Being therefore in contempt on the proofs before the court, Mr. Dallas, his counsel, was heard in extenuation of the offence. He made a long and ingenious commentary on the paper, not by way of vindicating it, for he confessed it was indecent and contemptuous, and unauthorized by the proceedings on the trial; but with a view to extenuate. He undertook to show that the defendant had been provoked and irritated into this imprudent step, by a publication in Wayne's Gazette of the United States, the day after the trial.

TILGHMAN, Chief Judge. A motion was made by the counsel for Levi Hollingsworth, for a rule to show cause why an attachment should not issue against you, grounded on an affidavit of your having made a publication in the newspaper called the Aurora, which was supposed to be a contempt of this court. You appeared in court, on the day appointed for showing cause, and when the prosecutor was about to offer evidence in support of the rule, you voluntarily declared that you confessed yourself the author of the publication in the Aurora. The counsel for the prosecutor were then heard in support of the rule, and your counsel made an elaborate and ingenious argument against it. The court delivered their opinion yesterday, that you had been guilty of a contempt, and made the rule absolute. You were then informed, that if you wished to answer interrogatories, it was your right and your privilege to have them exhibited by the prosecutor; and that if, by your answer on oath, you cleared yourself of the contempt, it would be received as the truth, notwithstanding the evidence that had been produced against you, and you would be discharged from all further proceedings. You requested time to consider of it, which was granted you; and you have this day declared that you do not wish the interrogatories to be exhibited.

Before I pronounce the judgment of the court, I will briefly mention the circumstances of your case. Levi Hollingsworth

brought an action against you for a libel. You pleaded, that both he and you were citizens of the state of Pennsylvania, and therefore the circuit court of the United States had no jurisdiction. The plaintiff replied, that you were not a citizen of the state of Pennsylvania, but a subject of the king of Great Britain; and on that point issue was joined. The cause came to trial this term. The jury were sworn, and evidence offered on both sides, after which it was agreed between the counsel, that the cause should be submitted to the jury, under the charge of the court, without argument. In consequence of this agreement, after premising that the court were always desirous of receiving information from the arguments of learned counsel, and that if your counsel on reflection were dissatisfied with the court's decision, they might either take a bill of exceptions, or move for a new trial, I delivered their clear and unanimous opinion, that upon the evidence produced, taking it in the most favourable point of view for you, you were to be considered a British subject. The jury, having received this charge, retired for a few minutes, and returned with a verdict in conformity to it. The court have already declared, and I now repeat it, that though your plea was put in on oath, the verdict of the jury against you is no imputation on your moral character. The truth of your plea depended on matter of law, and supposing that the law was in your favour, you might very innocently have sworn to it as you did. In pursuance of an agreement between the counsel, the jury did not assess the plaintiff's damages. The counsel then made another agreement, that the damages should be assessed by a special or struck jury next term, and that you should have liberty to offer any evidence in mitigation of damages, which might legally be given in evidence on the general issue joined. Your counsel have candidly declared, that in the whole course of these proceedings, you received from the court that liberal and impartial treatment, which we do not consider as matter of favour, but the strict right of every one who appears before us. Under these circumstances, the action being still depending, the damages (the great object of the suit) remaining to be assessed, you made a publication in your own paper, the Aurora, in which, after mentioning the decision which had recently taken place, you endeavored to draw public odium on the plaintiff, by representing him as a man who had been guilty of treason, and saved from the gallows by the lenity of the late chief justice of Pennsylvania. You asserted that the respectable jury who tried your cause had given a most infamous verdict; and you made insinuations, too plain to be misunderstood, that no justice was to be expected by citizens of republican principles, in a trial by struck jury, and under the system for the administration of justice, established by the existing law of the United States, which you indecently styled "Mr. Adams's judiciary law." The evident tendency of your whole publication was to vilify and degrade the character of the plaintiff, and thereby to lessen his damages; to deter the counsel of the plaintiff, the clerk of the court, and the future jury, from doing their duty; and to intimidate the court themselves, if they were susceptible of intimidation, which most surely they are not, from whatever quarter or by whatever means it may be attempted. All the world must be sensible that proceedings of this kind tend to subvert the foundations of justice. If judges and jurors, parties and their counsel, be subjected, during the pendency of suits, to the aspersions and unrestrained publications of the press, what, but the destruction of the trial by jury, must ensue? I mean the impartiality, the purity, the independence of that trial. Some men may be found so fortified by nature or habit, as to be above all influence of that kind. But how many honest and honourable minds will either wholly withdraw themselves from taking any part in the administration of justice, or shrink from the free and unbiased discharge of their office, if it be permitted that they should be held up to the world as degraded, corrupt, and infamous? Jurors are not volunteers; they are called here by compulsion of law, and generally give their attendance to the great detriment of their private affairs. They are therefore more strongly entitled to protection. If they remain unprotected, they will soon learn to despise the process of a court which will be itself contemptible, and relinquish an inconvenient duty, subjecting them to calumny and disgrace. These consequences will follow, in a greater or less degree, with reference to the judges, the jury, the counsel, the officers concerned in returning jurors, and all who may be necessarily employed in the administration of justice. If therefore the trial by jury is to be preserved; if the rights of suitors are to be protected touching their dearest interests, of property, life, or character; courts of justice must prevent all discussions, all interference, or reflections in newspapers, while causes are depending. This is equally the privilege and security of both parties; and the support of it is the common cause of every virtuous man in the community. In order to afford complete security, it is absolutely necessary to restrain and punish offences of this kind in a summary manner, and in a summary manner they have been punished, from the earliest times to the present day. There is nothing contrary to this mode of proceeding in the constitution of the United States, though it declares that the trial of all crimes shall be by jury. By fair construction this is only to be intended

of those crimes which by our former laws and customs had been tried by jury. This construction has been universally received by the courts of the United States, and by the courts of the several states, whose particular constitutions contain a similar provision. It was determined very solemnly in the supreme court of Pennsylvania, in the case of Com. v. Oswald [1 Dall. (1 U. S.) 317]. The present governor of Pennsylvania was then chief justice. He is well versed in the general principles of the law, as well as the usages and customs of the United States, and cannot be supposed to have favored constructions unfriendly to true liberty, or unwarranted by the genuine sense of the constitution. The principles established in Oswald's Case, are too strongly founded to be shaken; and I can say with certainty, that for the last seven years, they have been considered and acted upon as the undoubted law of Pennsylvania. The statutes of the United States expressly give to their courts the power of punishing contempts by fine or imprisonment at their discretion, and whoever attends to the expressions in those statutes, will easily perceive that they recognize a summary mode of proceeding. We confine ourselves within the ancient limits of the law, recently retraced by legislative provisions and judicial decisions. You have alleged, by way of extenuation of your offence, that you were provoked to it, by an abusive publication in Wayne's paper. But, if you were ill-treated by Mr. Wayne, you should have applied to the law for redress, and not have revenged yourself, by attacking Mr. Hollingsworth, the jury, the counsel, the officers, and the court. To give your apology its utmost force, it amounts but to this; that you acted under the impulse of passion. The court have taken that circumstance into consideration; at the same time, I think myself bound to declare, that passion is no justification of an offence, and cannot go far, even in extenuation. If a plea of that kind were allowed, men of violent tempers would have no inducement to restrain them I am satisfied that on reflection, you yourself must be sensible that you have acted with extreme impropriety. Your case is attended with circumstances of far greater aggravation than Oswald's. But though the court have power to punish at discretion, it is far from their inclination to crush you, by an oppressive fine, or lasting imprisonment. They hope and believe offences of this kind will be prevented in future by a general conviction of their destructive tendency, and by an assurance that the court possess both the power and the resolution to punish them. Upon the whole, the judgment of the court is, that you be imprisoned for thirty days including this day, that you pay the costs of the prosecution, and that you stand committed till this judgment be complied with.