Davis, J.,
delivered the opinion of the court:
The statute which sends this case here lays down rules for its trial and the principles which shall govern the court in deciding it.. The act provides:
“That the claim of Madeleine Vinton Dahlgren, ás adminis-tratrix of the late Eear-Admiral John A. Dahlgren, for compensation for the adoption and use by the Government of the United States of certain inventions relating to ordnance, made by the said John A. Dahlgren, and for which letters patent of the United States, numbered thirty-two thousand nine hundred and eighty-three (32983) thirty-two thousand- nine hundred and eighty-four (32984), thirty-two thousand nine hundred and *49 eighty-five (32985), thirty-two thousand nine hundred and eighty-six (32986), were issued to him, be, and the same is hereby, referred to the Court of Claims, which court is hereby vested with jurisdiction in the premises, and whose duty it shall be to hear and determine:
“First, whether the said John A. Dahlgren was the first and original .inventor of the inventions described in said letters patent, or any of them; and if they shall find that he was such first and original inventor of any-of the same, then to determine,
Secondly, what amount of compensation, if any, his estate is justly entitled to receive from the United States for the use of his said inventions, or any of them, either before or since the date of said letters patent, up to the time of adjudication, and for a full and entire transfer of said several patents to the United States; and in determining the right of said estate to recover the amount of compensation to be paid said estate for the use of said inventions and the transfer of said patents, the court shall take into consideration the facts, if proven, that, while the said John A. Dahlgren was engaged in perfecting the inventions he was in the service of the United States as an officer in the Navy, and that the expense of making experiments, trials, and tests for the purpose of perfecting such inventions was paid by the United States: Provided, That in no event shall such Court of Claims allow for the use and transfer of said patents, on the basis aforesaid, a sum exceeding sixty-five thousand dollars ($65,000); but said sum shall not be diminished pro rata in case the claimant fails to establish the novelty, use, or value of any of said patents.
“ Either party may appeal to the Supreme Court of the United States upon any such question where appeals now lie in other cases, arising during the progress of the hearing of said claim, and from any judgment in said case, at any time within ninety days after the rendition thereof; and any judgment rendered in favor of the claimant, as such administratrix, shall be paid in the same manner as other judgments of said Court of Claims; and the payment of such judgment shall vest the full and absolute right to said patents, and each of them, in the United States.” (Act June 19, 1878, 20 Stat. L., p. 583, ch. 357.)
From the language of this act it would naturally be inferred that, after passing upon the originality of the invention, we are “ then ” — that is, at once — to enter upon the question of damages.
The Attorney-General, however, contends otherwise. In an ingenious and forcible argument he urges that the instruction to the court that the fact of Dahlgren’s being in the Navy while perfecting his inventions, and of the payment of the cost of the *50 experiments from the Treasury are to be taken into consideration in determining the right of his estate to recover; that the statute explicitly directs us to consider them in connection with the question, not of the amount of damages, but of the right of recovery. ,
If we accept this construction of the act, the claimant’s case comes to an end almost as soon as it begins. Lieutenant Dahl-gren was an officer in the Navy, on duty at Washington as an ordnance officer when these experiments began. They were conducted by him in the line of his duty, at the public expense, under the constant supervision of his superior, to whom he reported every step, and with a view to improvements in the ordnance for the Navy. While they were going on his pay was increased by special act of Congress beyond that of other officers of his rank on duty on like shore service. Their results were reported to Congress by the Secretary of the Navy. Special appropriations were made for conducting them on a larger scale at sea. All tírese facts were, through. statutes of the United States, through reports of the Secretary of the Navy, and through other documentary proof, known to Congress when it passed this act. They are, if not waived, a complete defense here.
If Congress had intended to set this defense up, it is more reasonable to suppose that it would have done so itself rather than put the claimant to the cost of a suit in order to have it set up here. And when we consider that it apparently intended under the word First ” to marshal all the subjects which were to be considered in bar to the right of recovery, and under the word “ Second” all those relating to the amount of damages, this arrangement and collocation of the legislative instructions, taken in connection with the previous probabilities, raise the strongest presumption against the Attorney-General’s construction.
In order to avoid this result, he is obliged to separate from the act that portion upon which he relies, and to regard the remainder as surplusage. If he is correct, the effective words of the act are “ in determining the right of said estate to recover, the court shall take into consideration,” &c., and the words “ the amount of compensation to be paid said estate for the use of said inventions and the transfer of said patents ” have no force whatever.
*51 His argument meets witli a further difficulty iu the consideration that there was a dedication of Dahlgren’s inventions before the patents were issued and that that defense is waived by Congress. It does not seem probable that the legislature would waive the defense of dedication and instruct the court to consider the facts insisted on by the Attorney-General in bar.
All this leads irresistibly to the conclusion that the only way in which we can give force to the words which the Attorney-General’s construction expunges from the statute, and can make the act conform to the probable wishes of Congress, is by construing it as a direction to the court to consider the facts referred to, if proved, in determining what amount of compensation Dahlgren’s estate has a right to recover.
It is found that Dahlgren was the first and original inventor of all the inventions described in the patents referred to in the act j but that those described in Nos. 32985 and 32986 had no utility ■or Aralue. This leaves for consideration only the inventions described in Nos. 32983 and 32984. The claim under No. 32983 was for the completed gun of the form and proportions known as the Dahlgren gun, of whatever caliber it might be made» The claim under No. 32984 was for a form of casting for the manufacture of that gun, by means of which it was claimed that a greater uniformity in strength of metal could be attained than by the forms previously in use. This general statement of the nature of these inventions is sufficient for the purposes of this opinion.
The United States have made extensive use of these inventions. In all, they have manufactured or caused to be manufactured, and have used 3,948 Dahlgren guns, of an aggregate weight of 23,453,160 pounds. In determining what they ought to pay for such use and for the transfer of all the patents, after settling the extent and value of the use in the past, and the probable value of the remainder of the term, we are required ta take into consideration the proved facts that during the whole period in which Dahlgren was engaged in perfecting his inventions he was in the service of the United States as an officer in the Navy, and that the expense of making the experiments* trials, and tests for the purpose of perfecting the inventions was paid by the United States. But before determining the ■amount of the compensation, we have first to decide a prelimi *52 nary question which came up in argument as to the subject fox' which compensation is to be given.
About the time of the beginning of Dahlgren’s experiments, important changes were going on in the naval armament of the world. G-uns of a larger caliber were being introduced, whereby the number of guns in the armament was diminished, and the force necessary to handle them was decreased. The proportion of shell guns to shot guns was at the same time increased. These ideas did not originate in the United States,, nor were they peculiar to any service. Dahlgren had the fullest faith in them, and this faith buoyed him up and led him on to success. In conceiving and perfecting his invention he was influenced by patriotic motives only. The record shows that he asserted no title in* his inventions until he saw the gun which he had invented about to be put into use in a foreign service with the assent of his own government. Hia only wish seems to have been to arm the service of which he was so distinguished a member with effective gxins, and to combine those g'uns together in the most effective manner.
Under his inspiration and direction the ideas which had taken hold of naval constructors in Europe were introduced into' the American Navy in the new steamships constructed under the appropriations made in 1851 and 1855. The success of this experiment caused an entire change in the armament of the vessels of war in the Navy of the United States. By means of this the government made a large annual saving in the force employed for working the batteries. In the series of years which have elapsed, this saving has grown to be far in excess of the sum fixed by Congress as the maximum for the judgment in this case.
The counsel for the claimant contend that, inasmuch as Dahl-gren’s patented inventions were used in the application of the new mode of ax’mament, this saving is the true measure of compensation. The Attorney-General answer's, and the answer is conclusive, that the saving is effected by the mode of combining guns of a large caliber, and that it can be effected, and in fact is effected, in other services, by combining guns of a large caliber which are not ^Dahlgren guns. So far as the combination was made in the United States, it undoubtedly came lai’gely from Dahlgren’s brain; but in suggesting it he acted only in the line of his ordinary duty, and Oougress did not *53 intend to specially reward liim for it. The act directs us to find and award a compensation for the use of patented property, not ■a reward for the success of a suggestion made in the line of professional duty.
The materials for estimating the damages, or, in the language •of the statute, the amount of compensation which Admiral Dahlgren’s estate is justly entitled to receive from the United States, are meager. The xoatented articles have no market value, inasmuch as the United States is the only consumer. Therefore the inventor has lost no profits in the ordinary sense of the term. The inventor has made no licenses to any one, and had therefore no fixed royalty. The claimant, it is true, attempted to establish the reasonable worth of such a royalty on the basis of the weight of metal in the pieces; but the effort failed. The United States have not dealt in the articles, and have not used them so as to gain a profit in the ordinary commercial sense of the term. We are therefore thrown back upon the rule laid down in Suffolk County v. Hayden (3 Wall., 320), and must find the measure of the claimant’s compensation in “the utility and advantage of the invention to the United States over the old modes or devices that had been used for working out similar results ”.
The findings enumerate the advantages which the United States have gained by the use of Admiral Dahlgren’s inventions in the following language:
“The gun invented by said Dahlgren proved of great advantage to the United States, by reason of its larger shell to the same amount of metal, of its greater safety, of its greater power, of its economy in powder, and of its requiring a smaller ntimber of men to the same amount of metal.”
Some of these qualities can be weighed and estimated; others cannot be measured by a money standard. The act, which is our chart, shows that in the opinion of Congress the worth of all combined may reach the sum of $05,000. We have no difficulty in fixing it at that amount.
The judgment of the court is, that, taking into consideration the facts that while the claimant’s intestate was engaged in perfecting the inventions set forth in the complaint he was in the service of the United States as an officer in the Navy, and ■that the expense of making experiments, trials, and tests for the purpose of perfecting such inventions was paid by the *54 United States, tbe claimant shall have and recover of and from the United States the sum of sixty-five thousand dollars in full for the compensation which the estate of said Dahlgren is justly entitled to receive from the United States for the use of said inventions, or any of them, either before or since the date of said letters patent up to the time of this adjudication, and for the full and entire transfer of said patents to the United States.