Howey, J.,
delivered the opinion of the court.
Congress passed an act February 24, 1905, 33 Stat., pt. 1, 808, under which the legal representatives of the Eli Ayres mentioned in the act appeared and prosecuted the claim *113 therein mentioned. The act was embodied in an appropriation bill and appears in the margin.a
Though this act calls for a report of facts, the effect of the language has compelled the court to construe various statutes and to determine rights arising out of thfe proper interpretation of several treaties with which the Government is identified as-trustee, and to act according to a rule laid down for the court to report the action taken in the form of mere recitals of fact. Following the requirement to find certain facts, simple enough as to a number of them, the court is directed to determine the existence of a title “ according to the rules and principles of both law and equity; ” then to state what amount should he paid, if anything, for the appropriation of land to which title is alleged. This last requirement has imposed the necessity for the court to state the amount that must be paid, depending upon a supposed wrongful act by the Government; for the amount stated by the court that should he paid is the equivalent of the amount that must be *114 paid. By such direction the court must declare or not declare a liability. It is not an averment of fact from which a legal conclusion may be drawn, but a conclusion in itself. (Sigua Iron Co. v. Vendervort, 164 Pa. St. Rep., 574.) The ownership of real estate is projoerly a conclusion of law deducible from facts. (Levins v. Rovegno, 71 Cal., 279.) In the belief that the effect of construing laws and treaties and determining the disputed rights claimed, dependent as they are upon the proper interpretation of the public-land laws of the United States and the treaty stipulations of the Government, and reporting the conclusions of law which have necessarily arisen; and in the further belief that if the court could find and declare from the evidence made competent by the jurisdictional act that a liability did exist, judgment was directed to be entered on the conclusions reached adverse to the claim of title and claim of payment for it. (42 C. Cls. R., 385.)
*115 There is no admission of liability in the jurisdictional act, but an evident purpose for'the court to declare liability or the want of it. When it is considered that legal conclusions are rejected in the appellate court (United States v. Gleason, 175 U. S., 608; United States v. Barringer, 188 ibid., 593) and that cases where liability is declared can not be transmitted to the court of last resort for review which embody legal conclusions as findings of fact, it must be noted here that as to 53 sections of the land to which title is claimed the United States are involved from their own treasury as well as from the trust funds of the Chickasaws arising from the sale of 141 sections of the land. This is a matter essential to be noted if from any reasonable construction the action of the court be the exercise of judicial power or be merely ancillary and advisory.
As a case at law findings can-only be in the nature of a special verdict. Legal conclusions can not be stated as facts. (Burr v. Des Moines Co., 1 Wall., 102.) Conclusions of law being excluded as facts in a law case upon principle as well as authority, another reason exists why the statement of conclusions can not appear in the form of facts where equity powers are exercised. In an equity case the Supreme Court has held that the appellate court has the right to review the facts as well as the conclusions arising out of them. (Harvey v. United States, 105 U. S., 671; 148 U. S., 464.)
So, in every kind of case conclusions resting upon opinion can not be converted into a report of facts so as to make such conclusions proper findings. Hence, if this case be ap-pealable the appellate court must reject so much of the report as appears to embody as facts either legal or equitable conclusions.
While the line is sometimes difficult to draw in making up findings — as, for instance, in the matter of negligence, which sometimes presents mixed questions of law and fact — the question of the construction of a public statute or a treaty is a question exclusive^ a matter of law.
The contention here is that there is no exercise of judicial power, because every legal conclusion is called for as a fact. And it is insisted that this case falls within that class of *116 legislation where the court is authorized to find and report only the facts. Cases principally relied on are Hayburn’s case (2 Dall., 409); Ferreira’s case (13 How., 40); In re Sanborn (148 U. S., 222).
The argument proves too much in that it is conceded that conclusions of law are called for; conclusions which are not the subject of legislative revision, because judicial power in the Congress is forbidden to be exercised by the Constitution.
In Ferreira’s case, supra, there was a requirement that a judge acting ex -parte should adjust a claim upon such evidence as he might be able to obtain and then transmit his decision with the evidence to the Secretary of the Treasury for payment if deemed just and equitable by the Secretary. The judge there was merely an auditor for an executive officer who could affirm or disregard an allowance. The function imposed was held not to be judicial, because the decision was the award of a commissioner under an original act providing for claims which when allowed were to be known as awards, and the law by virtue of which the decision was made declared that it should not be final, but subordinate to that of the Secretary of the Treasury and subject to his reversal. The hearing provided for did not take claimants to a court upon issues directed to be determined and calling for decision upon evidence directed to be considered with both sides to the controversy represented by counsel. The principle was declared to be the same as in Ferreira’s case in the previous case of Hayburn, supra, where the duty was imposed not personally on the judges, but on the court eo nomine. There the court was required to examine certain pension claims and to determine the amount of pay that would be equivalent to the disability incurred under an act granting pensions to invalids and to certify their opinion to the Secretary 'of War, who, if he had cause to suspect imposition or mistake, was authorized to withhold the pension allowed by the court and report the case to Congress. Commenting upon this in Ferreira’s case, the Supreme Court did not differentiate the two cases otherwise than as stated, but did advert to the ex parte features in the latter case, where it was stated that the act of Congress required no petition and claimant had nothing to do but present his *117 claim with vouchers and the evidence in support oí it; and that the district attorney had no right to enter an appearance for the United States so as to make them a party to the proceedings and to authorize a judgment.
The case of Sanborn, ante, was a construction of the twelfth section of the act of March 3,1887, commonly known as the Tucker Act, which provides for the head of any of the executive departments, with the consent of the claimant, to transmit to the Court of Claims any “ claim or matter ” involving controverted questions of fact or law pending in such department, with the vouchers, papers, proofs and documents pertaining to such claim or matter, to be proceeded with under such rules as this court shall adopt, and when the facts and conclusions of law shall have been found the court shall report its findings to the department by which such claim or matter was transmitted. It was held that such a finding is not obligatory on the department to which it is reported because the finding or conclusion reached can not be enforcible by any process of execution issuing out of the court; nor made the final and indisputable basis of action either by the department or by Congress. The Supreme Court said that such a case “ was really no suit to which the United States were parties. The claimant did not pretend that the Government owed him anything for property sold or services rendered.”
Ayres’s contention here is that the United States, by their wrongful appropriation of 53 sections of land to which he had title, owe him the value of the land arising out of the wrongful acts of the Government in selling the 53 sections and issuing patents to persons residing in Mississippi, who, with their vendees, occupy the said land; and that as to 141 sections of the land the United States are likewise responsible as trustee. From those requirements of the act of our jurisdiction which direct the court to proceed, “ according to the principles and rules of both law and equity,” to find- certain facts and the existence of a title, if title there was, “ and all the material facts in connection therewith, embracing the amount that should be paid to the legal representatives of said Eli Ayres, deceased, by reason of the loss occasioned to him, if any, by the appropriation by the Government of the *118 said parcels or sections of land purchased from said' Indians as herein claimed,” and to consider “ affidavits of persons now dead, reports of officers of the United States Government, reports of committees of both Houses of Congress, and the several deeds from said Chickasaw Indians conveying the said parcels or sections of land, and all papers now on file with the claim in Congress,” the court was of opinion that by necessary implication its action is the reult of the exercise of judicial power.
Departmental, congressional, and committee reports being largely made up of opinion as to the matter of title, the construction given by these official reports as to the effect of certain decisions under which claimant’s title is sought to be maintained has necessarily been considered by the court in order to determine the proper construction of their conflicting presentation of the provisions of the treaty under which the claim, if claim it is, originated.
The legislative intent to restrict the action of this court to the performance of the mere ministerial function is not clear. Taken alone the phraseology calling for a report of facts would seem to be controlling, but the whole act must be construed together to determine the legislative intent. The effect of all the language must be considered and Congress, having knowledge of the effect of the language used, constituted a basis for the application of legal and equitable principles by providing the • forum to make the decision. The act fixes a standard of liability and the court is called upon to declare an amount in payment if the liability be established. The words of the act requiring the court to state the amount that should be paid are imperative in character. They not only imply a promise, but imply a command. If the action of the court is considered as a promise of the Government, the requirement to state an amount that should be paid upon a declared liability is equal to a covenant obligatory upon the legislative body to appropriate. An agreement that land “ should be ” appraised is equal to a covenant that the appraisement shall take place. (Eaton v. Strong, 7 Mass., 312.) The declaration of a liability followed by a statement of the result of that liability — nearly *119 all dependent upon issues of law — is a conclusion of law more than the mere recital of a fact.
In its early history this court, with the comptroller, was a special jurisdiction created by an act of Congress for special purposes. Neither possessed judicial power. (Gordon v. United States, 2 Wall., 651.) At that time no appeal could lie from either of these special jurisdictions to the Supreme Court. That. was forty-five years ago. When Chief Justice Tandy’s opinion appeared in Gordon’s case after his death in the appendix to 117 U. S., p. 698, he said that “ neither the Court of Claims nor the Supreme Court can by any process enforce its judgment,” but Congress might establish tribunals with special powers to examine* testimony and decide upon the validity and jus+ice of any claim for money against the United States subject to the provision and control -of Congress or a head of any of the departments. Gordon’s case was reargued, and Chief Justice Chase said that the authority given to the head of an executive department by necessary implication to revise the decisions of the Court of Claims denied to the court the 'judicial power from the exercise of which alone appeals could be taken to the Supreme Court. (United States v. Jones, 119 U. S., 479.) Mr. Justice Miller, who had dissented from the judgment in Gordon’s case, said in Langford v. United States (101 U. S., 341) that an act of Congress removing a provision for an appropriation on the estimate of the Secretary of the Treasury after it had been passed upon by the Court of Claims had left the appellate' power of the Supreme Court subject to be exercised ever since the repeal of the act stated. Commenting upon the action of this court in the following cases: United States v. Yale Todd (decided in 1794); Gordon v. United States (2 Wall., 561); United States v. Ferreira (18 How., 52); the Supreme Court in Sanborn’s case (148 U. S., 225), said “ afterwards, and perhaps in view of the conclusions, reached by this court in these cases, on March 17, 1866, in 14 Stat., 9, c. 19, Congress passed an act giving an appeal to the Supreme Court from judgments of the Court of Claims.” Express provision for such appeals appears in section 707 of *120 the Revised Statutes. Additions have been made since to the statutory law on this subject by the Tucker Act of March 3, 1887, 24 Stat., 505, c. 359.
In support of the objection to the entry of judgment it is urged that if the special act had conferred judicial power on the court an appeal would lie, where, if taken, such appeal might be dismissed in the appellate court under Ferreira’s case, ante, for lack of the necessary judicial power to render judgment. There are cases where the decision of this court is final under special acts. In Atocha's case (17 Wall., 440), the Supreme Court differentiated between claims under treaty stipulations and all other claims by saying that where this court was directed to make specific examination into the justice of a claim, and whether embraced within a treaty, if the trial court was of opinion that the claim was just and was embraced within the treaty and the court was required to fix and determine an amount, the matter thus referred was to ascertain a particular fact to guide the Government in the execution of its treaty stipulations. There the court was required to fix and determine an amount, but when so determined the special act declared that the amount should be paid and the Supreme Court decided that the judgment rendered must be taken as final, inasmuch as no mode was provided for a review.
In Vigo's case (21 Wall., 648), it was held that when a claim on the Government, not capable of being otherwise prosecuted, was by special act referred to the Court of Claims “ with full jurisdiction to adjust and settle the same ” judicial determination was involved which carried the right of appeal by inference though not given in terms by the special act. The words “ hear and determine ” as applied to the action of the Court of Claims and of the Circuit and District courts, as used in the act of March 3, 1887 (c. 359), imply an adjudication conclusive as between the parties, in the nature of a judgment or award. (United States v. Harmon, 147 U. S., 276.) This construction by the Supreme Court of the first section of the Tucker Act apparently overthrows the distinction made by Lord Ellenborough between the “ adjudication ” of a thing and the “ determination ” of *121 a matter submitted to Parliament in the famous case of Burdett v. Abbott (4 East., 29).
The Supreme Court has left in later cases no room to doubt that “ there are matters, involving public rights, which may be presented in such form that the judicial power is capable of acting on them, and which are susceptible of judicial determination, but which Congress may or may not bring within the cognizance of the courts of the United States, as it may deem proper.” (Fong Yue Ting v. United States, 149 U. S., 149; Interstate Commerce Commission v. Brimson, 154 ibid., 447.) In the first of these cases the court repeated with the above-quoted language what it de-dared to be equally careful and weighty words, as follows: “ To avoid misconstruction upon so grave a subject, we think it proper to state that we do not consider Congress can either withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty; nor, on the other hand, can it bring under the judicial power a matter which, from its nature, is not a subject for judicial determination,” citing Murray v. Hoboken Co. (18 How., 284).
The public rights presented in such form that the judicial power can be made to act on them within the meaning of the rule stated can not mean legislative revision if the questions submitted, are so judicial in their nature as to fix liability, or not to declare it, in the form of a report; and then to fix by the same token an amount that must be paid or not, according to the conclusion reached in the matter of liability. The “ cases and controversies ” prescribed by the Constitution for the courts to operate upon judicially embrace claims or contentions brought before the courts for adjudication by regular proceedings established for the protection or enforcement of rights, or the prevention, redress, or punishment of wrongs. (Smith v. Adams, 130 U. S., 173.) The judicial power is capable of 'acting only when the subject is submitted by a party who asserts his rights in the form prescribed by law. It then becomes “a case.” (Osborn v. Bank, 9 Wheat., 738.) “A case ” arises under the Constitution or laws of the United States whenever its decision de *122 pends upon the correct construction of either. (Cohens v. Virginia, 6 Wheat., 264, 379.) So “ a cáse ” growing out of a treaty is one involving rights given or protected by a treaty. (Owings v. Virginia, 5 Cranch, 348.) The settlement of a controversy arising or growing out of an Indian treaty (as well as a law^of Congress.) and the determination of an amount justly due does not include a claim which can only be asserted by disregarding a treaty. (Old Settlers v. United States, 148 U. S., 427.) Therefore, under the act of our jurisdiction the court must enter into the matter of this disputed title and the liability of the Government to repair the wrong, if wrong has been committed, not by disregarding the treaty or by overthrowing its stipulations, but by giving a judicial meaning and interpretation to it as a contract “ according to the rules and principles of both law and equity.”
Either of the Houses of Congress can refer a claim to this court (with certain express exceptions) for the mere findings of facts under the act of March 3, 1887, 24 Stat., 505. But neither house can authorize the court to adjudicate such a claim and render a final judgment. When both Houses unite in referring a claim by special statute which either might refer by resolution, a rational purpose must be inferred. That is, that Congress intended that the court must do what it could not do without the aid of a statute, to wit, adjudicate the claim where the language of the special act compels the court to construe laws and treaties and establish rights by making conclusions of law. The facts found in a case referred by resolution under the fourteenth section of the act of 1887, commonly known as the Tucker Act, negatives the possibility of an adjudication as in claims referred under the Bowman Act and the French Claims act. The fourteenth section being plainly ancillary and advisory, no report is complete under it without stating an amount that may be paid at the discretion of the legislative body unless the case turns on a question of jurisdiction. When the court acts on a claim referred by resolution by either House of Congress and reports facts, the court can not peremptorily say that the amount reported should be paid, nor determine disputed matters of law by construing laws and by interpre *123 tation fix such rights by legal conclusions when facts only can be reported. The duty of the court has been held to be in a case strictly congressional that the findings shall give rise to no misunderstanding in Congress as to its legal or equitable conditions, in consequence of which the court elected to explain the findings in an opinion. (Vance's case, 30 C. Cls., 252.) But the court in a recent case dedined to find facts on a bill referred involving a controversy growing out of treaty obligations which involved more questions of law than of fact; and the court, speaking through Barney, J., stated in effect that the claim could only be adjudicated by law conferring upon the court the necessary jurisdiction. (White River Utes et al. v. United States, 43 C. Cls. R., 260.) If the case at bar could be appealed — as to which we express no opinion — the Supreme Court might well say that the'phraseology of the act had imposed the duty of an adjudication and that the conclusions of law reported as facts do not change their character in the form by which such conclusions are so reported and that such a report excludes review by the legislative branch.
In Irwin's case (127 U. S., 125) the Supreme Court declared that the words “ report the same to Congress ” in a special act did not destroy the power to enter judgment where by existing law such judgments were required to be reported to Congress. Section 1057, Revised Statutes, provides for a full and complete statement of all the judgments rendered by this court annually to be transmitted to Congress. This court having the United States a party to every controversy or proceeding of any kind has its action annually reported in some form to every Congress. Additional words requiring a report, as said in Irwin’s case, do not change the character of the judgments required by general law to be reported.
It can hardly be said that the present proceeding would remain a dead letter and without any operation upon the rights of the parties if the court’s decision established the existence of a title and stated an amount that should be paid from the proceeds of the sale of the land for the Government’s wrongful appropriation. True, Congress might refuse an appropriation (just as they might on the action of *124 any other court), but with a liability called for and stated if a title were established an appropriation would probably result just as in all judgments against the Government when rendered by courts of the United States. It is not a peculiarity in the proceedings of this court that an execution can not issue against the United States. No court can reach the public Treasury by its process; not even the Supreme Court. All judgments against the United States depend upon appropriations. Declared liability for a sum certain is the essential thing for which appropriations follow.
The matter here has all the elements of a case. It is a dispute with parties defining their respective positions with pleadings, with a result derived from as much of an apparent adjudication as can be applied to any case. The principal matters considered are matters of law and not of fact. The dispute relates to a title to real estate. Such a dispute has teen held justiciable and properly determinable in a judicial proceeding where the parties were a State and the United States- — the State claiming title to the land as unceded Indian country, and the United States upholding rights of an Indian tribe to the land for a reservation. (Minnesota v. Hitchcock, 185 U. S., 373.) The court took jurisdiction of the merits notwithstanding the United States were not in terms a party without pecuniary interest. Thus Minnesota v. Hitchcock brushed aside technical defenses. Indeed, technical defenses known to Congress must be deemed waived. (Dahlgren’s Case, 16 C. Cls. R., 30.) The statute of limitations, for instance, would hardly stand in the way of an appropriation where the ultimate propositions submitted disclose liability and fix an amount under the authority of the act for the discharge of such liability.
In the conflicting decisions — difficult to reconcile respecting the scope and effect of acts creating agencies for the adjustment of demands against the Treasury and the settlement of government liability incidental to such adjustments — the differences appearing have mainly arisen out of those acts conferring special power upon executive officers and commissions and not upon courts. Generally the intent can not be attributed to the legislature to confer anything *125 but ministerial duties upon bodies not judicial where by the nature of the legislation the ministerial might expeditiously serve the purpose by proof of facts of a simple nature. On the other hand, the intent can not be attributed to Congress (since appeals are provided for by general law) — unless the language be quite plain — to exclude the exercise of the functions properly belonging to a court, if the matter referred be justiciable and legal grounds involving opinion respecting the right of recovery be the issue submitted for determination. The ministerial duties imposed upon executive officers do not relate to the exercise of discretion in the discharge of regular official duty. (Kendall v. United, States, 12 Pet., 593.) A ministerial duty, however, is one to be performed or exercised in a given state of facts, in a prescribed manner, in obedience to law. It is “ a simple definite duty arising under circumstances admitted or proved to exist and imposed by law.” (State v. Johnson, 4 Wall, 498.) It is true that where the office itself is judicial a special duty may be imposed which is ministerial, and some of the cases (they are too many to be more particularly reviewed) have gone to the extent of holding that upon the facts such officers are bound to perform the act as ministerial although depending upon a statute which requires in some degree a construction of statutory language. Whether the right to perform the act be ministerial or judicial must not be determined by the mere forms of expression in which the power or duty is laid. Certainly the thing to be done if denominated ministerial should not be repugnant in the performance of that act to a thing essentially judicial. So, if this special act has referred a justiciable matter upon which liability is deduced, with a definite sum stated by way of compensation for the liability declared which must be paid, we are confronted with tire second section of Article III of the organic law that “ the judicial power extends to all cases, in law and equity, arising under the Constitution and the laws and likewise under treaties,” which the Supreme Court may review. This special act therefore involves consequences in the settlement of demands against the Government which if adhered to as a precedent affects future legislation to such an extent *126 that ministerial and not judicial functions may operate too far. Indeed, the practical effect will be to supersede the functions of the courts so far as claims against the United States are concerned until on some declared liability the Supreme Court may say otherwise’, because judicial power is forbidden to be exercised in the legislative branch by the Constitution.
The essential thing under this act is the intent and the extent of the power involved in the reference. This intent and the effect of the language and the nature of the matters to be considered must be gathered not from the accidents of language but from the context of the whole act and the effect of the words used in defining the rights to be determined. It can not be questioned from the language itself that this claimant expected everything to be reported as a fact, notwithstanding that the intricate questions submitted carried the court into a determination of the law and equities of the case respecting the justiciable matter of the disputed title. There is room for differences of opinion, however, when we weigh the scope and effect of an act which in its last analysis has imposed upon the court an apparent ministerial duty and has yet caused the court to exercise functions of a judicial nature. From the beginning the right to enter judgment has never been considered by any member of the court as clear. The question, however, was held open for argument and further consideration until the merits could be reported, because of the duty of the court to carefully consider the matter. This we have done not with reference to any consequences that might ensue as to the merits of the present case but because of the larger consequences, involved in dealing with claims against the United States.
The findings of fact last made on the merits, accompanied with a direction to transmit the action of the court directly to Congress in the form of a final report, appear as a substitute for all former action. The present opinion will be placed on file (with the findings and the opinion on the merits), as showing the doubts which seem to the court to have arisen under the special act as to whether the action taken has been in discharge of a ministerial duty or the exercise of the judicial function.

 “ That the claim of the legal representatives of Eli Ayres, deceased, for the value and proceeds of certain parcels and sections of land situated in the State of Mississippi, and to which the said Eli Ayres claims to have held the legal or equitable title at the time of his death, which title as claimed was acquired and derived by him by purchase and deeds from certain Chickasaw Indians in the year eighteen hundred and thirty-nine, the said Chickasaw Indians as grantors in said deeds having derived and acquired their respective title or titles to the said parcels or sections of land by grant and treaty stipulations in accordance with the provisions contained in the treaty concluded between the United States and the Chickasaw Nation of Indians on May twenty-fourth, eighteen hundred and thirty-four, amendatory of the treaty of October twentieth, eighteen hundred and thirty-two, and which said parcels or sections of land and the proceeds thereof, in whole or in part, it is alleged, have been without right or title thereto, and without authority, either in law or in equity, appropriated by the United States Government and held or disposed of by said Government as its o-frn property, or otherwise, be, and the same is hereby, referred to the Court of Claims of the United States; and jurisdiction is hereby conferred on said Court of Claims to proceed, according to the principles and rules of both law and equity, to find the facts as to the purchase of said parcels'or sections of land from said Chickasaw Indians by said Ayres and as to the deeds received by him from the said Indians, and the amounts paid by said Ayres to said Indians per acre for said parcels or sections of land, and as to *114 the title of said Ayres to the same; and also to find the facts as to the alleged appropriation by the United States Government of the said parcels or sections of land alleged to have been so purchased by said-Ayres from the said Indians, and what disposition, if any, has been made of the same by the United States, whether the same has been disposed of by the United States under the public-land laws, and all the material facts in connection therewith, embracing the amount that should be paid to the legal representatives of said Eli Ayres, deceased, by reason of the loss occasioned to him, if any, by the appropriation by the Government of the said parcels or sections of land purchased from said Indians as herein claimed; and what amount of the proceeds of the sales of said land, if any, is held by the Government in trust for the said Chickasaw Indians; and also whether any of the said parcels or sections of land are still held and not disposed of by the United States; and the court is authorized to find any other fact or facts of importance to the parties which may arise in this claim; and when the court has found the facts under .ttte provisions of this act, it is hereby authorized and directed to report the same to Congress; and in considering the merits of the claim in the finding of the facts, affidavits of persons now dead, reports of officers of the United States Government, reports of committees of both Houses of Congress, and the several deeds from the said Chickasaw Indians conveying said parcels or sections of land to Eli Ayres, deceased, and all papers now on file with the claim in Congress or with the committees of either House relating to such claim, shall be considered by the court, and such weight given thereto as may be deemed by the court to be right and proper.”