Booth, Chief Justice,
delivered the opinion of the court:
Congress on February 23, 1927, enacted the following special jurisdictional act:
“ Be it enacted by the Senate and House of Representatives ■of the United States of America in Congress assembled, That the United States Court of Claims be, and it is hereby, authorized and directed to hear and determine the claim of U. C. Ericsson for compensation for the adoption and use by the Government of the United States of a certain invention relating to an antiexplosive and noninflammable gasoline tank, for which letters patent of the United States, numbered 1381175, was issued to him June 14, 1921. Said claim shall not be considered as barred because of the use of the patented device by the Government for more than two years, or by any existing statute of limitations, nor because -of the fact that the claimant was in the military service of the United States at the time the patented article was invented.”
The scope and purpose of the act are apparent. We do not think it is subject to the limitations insisted upon by the defendant. Clearly Congress intended to waive shop rights *410 or license to use the alleged invention, and afford the plaintiff a forum for the adjudication of patent rights, irrespective of available defenses under the jurisdictional act of June 25, 1910 (36 Stat. 851), as amended by the act of July 1, 1918 (40 Stat. 704, 705). Dahlgren v. United States, 16 C. Cls. 30.
The plaintiff was in the military service during the late-war, being a captain in the Quartermaster Corps, and while so engaged became interested in the development of an anti-explosive and noninflammable gasoline tank for aeroplanes. The subject matter of the patent involved discloses a single embodiment of rolled-steel or copper tank with oval side, top, and bottom, having thereon a covering comprising a plurality of layers of various materials. The utility of the invention centers upon closing a possible leakage due to a puncture of the tank in combat, as well as the prevention of fire by removing the phosphorus from bullets upon penetration of the same.
Claim 7 of the patent is relied on for infringement. It reads as follows:
“ The combination with a metallic liquid-fuel container, of an elastic covering extending entirely around the same and tightly fitted to the container, said covering embodying a layer of elastic expansible material adapted to automatically close punctures, and a tire-tape covering tightly binding the said elastic layer to the container wall.”
The words “ tire tape,” used in connection with the words “ covering tightly binding the said elastic layer, etc.,” are obviously a mistake. No tire tape is disclosed in the drawings or described in the specifications, and we think the mistake was made during an amendment of the case in the Patent Office. “ Tire fabric ” was intended, and the claim when construed in the light of plaintiff’s disclosed construction authorizes the substitution of the correct material. Hiler Audio Corporation v. General Radio Company, 26 Fed. (2d) 475, 478.
The vital issue in the case is patentability. We have no doubt as to infringement if the device is novel and involves the exercise of inventive genius. The prior art reflects a *411 decidedly narrow field for novel inventions pertaining to -flie prevention of leakage, fire and explosions dne to tbe concussion, penetration, or disruption of containers for’ highly volatile and inflammable fluids such as here involved. ■One, if not the most important, citation relied upon by the defendant is the British patent to Eussell # 21423, of 1909. This patent relates to a method of protecting fuel tanks containing petrol or other fuel used in internal-combustion engines, in aeroplanes and airships. The inventor discloses his purpose in the following language found on page 2 of the patent, viz:
“ The object of the said envelope or covering being to prevent the leakage of spirit from the- tank, and pipes if damaged which might happen through concussion or other cause. The said envelope or covering being of an elastic nature such as rubber, or rubber strengthened with canvas. ‡ ‡ $
“What I claim in this invention is a pliable yielding elastic close-fitting secondary or emergency exterior cover or case to the tank of sufficient strength to withstand- considerable shock and rough usage and prevent the possibility of the escape of petrol or other spirit from a leaky tank.
“ The covering could be made or built on the tank by layers of sheet rubber and a fabric to form practically a seamless cover having the usual inlet and outlet Connections, * * *.”
It is true that the date of the invention is prior to the use of aeroplanes in aerial combat, but it is equally true that rubber possesses the inherent property of elasticity •and will function to close a puncture made therein. One skilled in the art would apparently experience no difficulty, in view of the above disclosure, in extracting knowledge of how to protect an airplane fuel tank by surrounding it with elastic rubber held in place by a fabric. The plaintiff’s conception seemingly follows closely — reading claim 7 — the essential elements of the Eussell patent. The use of an ■elastic material to accomplish what the plaintiff’s covering to the tank did accomplish was manifestly old. Swiss patent #71310-of September 15, 1915, is one, we think, of ■definite anticipation. The inventor states that the object *412 of the invention is an arrangement for prevention of leakage of fluids from tanks which have been perforated by firearms. The patent then goes on to state that such an arrangement is particularly suitable for tanks of aircraft and is of the highest importance since it has been shown that in the majority of cases where aircraft have been shot down the cause of the fall is to be sought in the fact that the gasoline tank is perforated by bullets and its contents leak out. The specification of the patent states that “the tank wall is covered over with a layer of gelatinlike elastic material. This material can, for' example, be such as that of which certain rollers in printing machines, hectograph pads, and the like.are made.” It is also suggested, from the following phraseology, that this material be enclosed in a protective cover:
“For the protection of the layer of gelatinlike elastic mass against injury and dampness it is for' this purpose covered with a waterproof material.”
The following quotation from the Swiss patent defines-the functioning of the elastic cover:
“ It is apparent that by the perforation of a bullet through such a mass no opening and no rent remains; that one in consequence of the elasticity of the mass can observe only á small round depression; there remains from the penetration of the bullet through the elastic mass nothing at all' that resembles a rupture, but one observes only a round dent which indicates the place where the bullet has penetrated while the bullet on its way through the mass does not push the material in front of it or tear it, but only presses it sidewise. The contraction after the penetration of the bullet is so perfect a one that the leakage of the fluid from the tank is impossible.”
The following quotation from the same patent is especially pertinent to the use of rubber:
“For gasoline tanks it is still more required in the elastic layer of the gelatinlike mass that one or more layers of caoutchouc (rubber) be imbedded. Caoutchouc has, as is known, the property of dissolving in gasoline. Should, thus, benzine leak out of the perforation caused by the penetration of the bullet and reach the layer of caoutchouc, thus-the same will soften and adds- to the contraction of the perforation.”
*413 In claim 7 the plaintiff specifies the puncture-stopping: material as “ a layer of elastic expansible material adapted to automatically close punctures.” By the use of this broad; phrase the plaintiff has clearly avoided limiting himself to. any specific material, such as rubber, and the gelatinlike-elastic material specified by the Swiss patent clearly comes within the terms of claim 7. When one follows the teachings of the Swiss patent and constructs a “tank covering”' in accordance therewith, they would formulate a construction coming within the terms of claim 7, and that which infringes, if early enough, invalidates. Both of the above-patents were available to the public more than two years-prior to the filing date of the Ericsson application and hence the actual date of plaintiff’s invention and reduction to-practice becomes of no importance.
There are many other patents in the art. We need not,, we think, review them in detail. In our view of the case, as appears from the findings, claim 7 of the patent in suit is-, fully anticipated by the art and presents nothing that is. not old and well known to those skilled in the art. As previously observed, the field for invention was circumscribed to an acute extent, and notwithstanding the commendable-effort of the plaintiff in the line of safety, we are unable to-sustain the contentions advanced from a legal point of view,, and must dismiss the petition. It is so ordered.
Williams, Judge; Littleton, Judge/ and GreeN, Judge, concur.
This case was tried before the appointment of Whaley,, Judge. He therefore took no part in its decision.